UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DEBRA S. BRAUNER, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. |
| § | |
| MICHAEL J. ASTRUE, § | SA-07-CV-0402 FB (NN) |
| Commissioner of the Social § | |
| Security Administration, § | |
| § | |
| Defendant. § | |

MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:  Honorable Fred Biery
     United States District Judge

**Introduction**

Plaintiff Debra S. Brauner brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Brauner is not disabled for the purposes of the Social Security Act (the Act) and denying Brauner's application for Supplemental Security Insurance (SSI) benefits. Brauner asks the district court to reverse the Commissioner's decision and to render judgment in her favor. In the alternative, Brauner asks the district court to reverse the decision and remand the case for further proceedings.

After considering Brauner's brief in support of her complaint,[1] the brief in support of the Commissioner's decision,[2] the record of the SSA proceedings, the pleadings on file, the applicable

---

[1] Docket entry # 13.

[2] Docket entry # 14.

case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[3]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Brauner exhausted her administrative remedies prior to filing this action in federal court. Brauner applied for DIB on August 24, 2004, alleging disability beginning July 1, 2004.[4] She did not identify a triggering event or condition for this date. The Commissioner denied the application initially and on reconsideration.[5] Brauner then asked for a hearing before an administrative law judge (ALJ).[6] A hearing was held before an ALJ on May 6, 2006.[7] The ALJ issued a decision on August 8, 2006, concluding that Brauner is not disabled

---

[3]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[4]SSA record, p. 65.

[5]*Id*. at pp. 19 & 32.

[6]*Id*. at p. 35.

[7]*Id*. at pp. 240.

2

within the meaning of the Act.[8]  Brauner asked for review of the decision on October 2, 2006.[9] The SSA Appeals Council denied the request for review on March 6, 2007, determining that no basis existed for reviewing the ALJ's decision.[10]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). After receiving the court's leave to proceed in forma pauperis, Brauner filed this action seeking review of the Commissioner's decision on May 5, 2007.[11]

### Issue Presented

> Is the ALJ's decision that Brauner was not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

### Analysis

#### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[12]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

---

[8]*Id*. at pp. 11-18.

[9]*Id*. at p. 7.

[10]*Id*. at p. 4.

[11]Docket entry # 3.

[12]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

reasonable mind might accept as adequate to support a conclusion."[13] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[16] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[17] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an

---

[13] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[14] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[15] *Martinez*, 64 F.3d at 173.

[16] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[17] *Martinez*, 64 F.3d at 174.

[18] *Id.*

application for benefits, and is under a disability, is eligible to receive benefits.[19] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[20] A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that he is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[21]

**2. Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[22] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[23]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[24] If so, the claimant will be found not disabled regardless of her medical condition

---

[19] 42 U.S.C. § 1382(a)(1) & (2).

[20] 42 U.S.C. § 1382c(a)(3)(A).

[21] 42 U.S.C. § 1382c(a)(3)(B).

[22] 20 C.F.R. §§ 404.1520 and 416.920.

[23] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[24] 20 C.F.R. §§ 404.1520 and 416.920.

or her age, education, or work experience.[25] The second step involves determining whether the claimant's impairment is severe.[26] If it is not severe, the claimant is deemed not disabled.[27] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[28] If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[29] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[30] If the claimant is still able to do her past work, the claimant is not disabled.[31] If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[32] If the claimant cannot do other work, he will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[33] Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the

---

[25]*Id.*

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Leggett*, 67 F.3d at 564.

claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[34] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[35]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step five of the evaluation process. At step one, the ALJ determined that Brauner had not engaged in substantial gainful activity since her alleged onset date.[36] At step two, the ALJ determined that Brauner is impaired by morbid obesity, osteoarthritis, asthma, headaches, dermatitis and diabetes; the ALJ characterized these impairments as severe.[37] At step three, the ALJ determined that Brauner's impairments, either singly or in combination, are not severe enough to meet, medically equal or functionally equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[38] At step four, the ALJ found that Brauner has the residual functional capacity to lift and carry a maximum of 10 pounds frequently and 20 pounds occasionally; and to stand and/or walk 4 hours per 8-hour work day; to sit for 6 hours in an 8-hour work day. The ALJ also determined that Brauner was limited in her ability to push/pull beyond the weight limitations for lifting/carrying; she must avoid climbing ropes/ladders/scaffolds; she can occasionally stoop/crouch; she must avoid concentrated exposure

---

[34] *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[35] *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[36] SSA record, p. 17.

[37] *Id.*

[38] *Id.*

to fumes, odors, dusts, gases, poor ventilation, and temperature extremes; and she must avoid long-term exposure to sunlight.[39]  The ALJ determined that although Brauner has no past relevant work, she is capable of a significant range of light work.[40]  At step five, the ALJ conferred with a vocational expert and concluded that a significant number of jobs exist in the national economy that Brauner can perform.[41]  The ALJ concluded that Brauner is not disabled.

**C. Brauner's Allegations of Error**

Brauner applied for disability based knee problems and asthmatic bronchitis, but in this case she complains about the ALJ's consideration of her mental limitations, hearing loss, and morbid obesity.  Brauner argues that because she is limited in her ability to read and spell, the ALJ should have ordered a full battery of testing to assess her mental and communication skills.  Brauner relies on the report and recommendation in *Johnson v. Barnhart*[42] in which the magistrate judge recommended a remand so the claimant could undergo a psychiatric examination.  In *Johnson*, the magistrate judge determined that the ALJ failed to fully develop the record in regard to claimant Johnson's mental limitations.  That report, however, does not control this case because the record is very different than the record in claimant Johnson's case.  Johnson's record included evidence that Johnson had a limited education, was hospitalized for psychiatric treatment, suffered from depression and anorexia, was treated with anti-depressants, complained about being stressed and feeling suicidal, attempted to kill her husband, exhibited low self-esteem, was easily confused,

---

[39]*Id.*

[40]*Id.*

[41]*Id.*

[42]285 F. Supp. 2d 899 (S.D. Tex. 2003).

and had difficulty communicating with the SSA's interviewer.  Brauner's record contains nothing in comparison.

"An ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination.  A consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment."[43]  Although the ALJ has a duty to develop the facts fully and fairly relating to a claimant's application,[44] the district judge cannot reverse the ALJ's decision unless the claimant shows that the ALJ failed to fulfill the duty to develop the record and that the claimant was prejudiced by the failure.[45]  Here, the record contains nothing to raise a suspicion of non-exertional impairment other than the limitation identified by the ALJ—Brauner's education—or that Brauner was prejudiced because the ALJ did not seek a residual mental functional capacity assessment.

Brauner did not rely on a mental limitation when she applied for benefits and she did not raise the issue during her administrative proceeding.  At most, the record shows that Brauner completed the eleventh grade, failed the GED examination three times, and is a poor speller.  Brauner's written responses to questions on the various application forms reflect the ability to communicate in writing—albeit with spelling errors—and suggests no cognitive deficiency or mental limitation.  For example, Brauner explained in a narrative why she stopped working, how she lost her job while she recuperating from a medical condition, was unable to get a job

---

[43] *Brock*, 84 F.3d at 728.

[44] *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

[45] *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

afterwards, why she did not seek treatment for her knee earlier, and how she learned she qualified for Medicare.[46] Another example, Brauner discussed her medical history in a fair amount of detail when she asked for reconsideration of the denial of her application[47] and provided the ALJ with a detailed description of her medications, including why she took them.[48] The ALJ acknowledged Brauner's limited education in his opinion and questioned a vocational expert about the impact of that limitation on a person's ability to work. The vocational expert was examined and cross-examined about educational limitation. The hearing transcript reflects that Brauner understood what she was asked and that she answered appropriately. The record contains no evidence suggesting the need for a consultative mental evaluation. The ALJ did not err in assessing Brauner's mental limitations.

Brauner also suggests that the ALJ used the wrong legal standard in assessing her hearing loss. She relies on *Stone v. Heckler*[49] in which the Fifth Circuit determined that an ALJ must not base a finding of non-severity on medical severity alone and explained that the finding of non-severity must include the claimant's ability to perform substantial gainful activity. The court stated that it would assume the ALJ used an incorrect standard in assessing the severity of a claimant's impairment, unless the correct standard is set out in the ALJ's opinion.[50] This authority does not demonstrate that the ALJ used an incorrect standard.

---

[46]SSA record, pp. 72 & 80.

[47]SSA record, pp. 102-09.

[48]SSA record, pp. 126-31.

[49]752 F.2d 1099 (5th Cir. 1985).

[50]*Stone*, 752 F.2d at 1106.

The SSA's regulations provide the standard for determining whether an impairment is severe. Specifically, the regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."[51] This standard is set forth on the second page of the ALJ's decision, showing the ALJ knew the appropriate standard. The standard applies at step three of the sequential process for determining whether a person is disabled. Brauner had the burden at that step. Brauner did not carry her burden.

Brauner did not base her alleged disability on a hearing loss. When Brauner applied for DIB in August 2004, she stated that knee problems and asthmatic bronchitis limited her ability to work.[52] Although Brauner may not have realized the extent of her hearing loss when she first applied, she was later assessed by an ear, nose and throat specialist. In November 2004, the specialist indicated that audiometric testing demonstrated "mild-to-severe sensorineural hearing loss, worse in the high frequencies, with 75% discrimination bilaterally.[53] Despite these results, Brauner did not complain about hearing loss when she sought reconsideration of the denial of her application in March 2005. Instead, she complained about knee pain, asthma, back pain, stomach problems, hemorrhoids, female problems, high cholesterol, and sleep disturbance.[54] She acknowledged in April 2005 that she needed hearing aids in both ears,[55] but she did not complain

---

[51] 20 C.F.R. § 404.1521(a).

[52] SSA record, p. 72.

[53] SSA record, p. 163.

[54] *Id*. at pp. 102-06.

[55] *Id*. at p. 110.

about hearing loss. Even after her application was denied on reconsideration,[56] she complained about increased pain in her knee, difficulties sleeping at night because of breathing problems, and pain from headaches.[57] She stated that her doctor told her she shouldn't climb stairs, kneel or squat, lift or carry, or push or pull more than five pounds, but she didn't complain about hearing loss.[58] She stated that she needed a hearing aid and that indigent health care did not pay for hearing aids, but did not assert that the hearing loss affected her daily activities. Even when the ALJ asked in May 2006 about why she cannot work, Brauner did not rely on hearing loss. Brauner testified that she can't work because of pain in her back and knees, headaches, and difficulty breathing.[59] Brauner's advocate did not question her about a hearing loss—the advocate questioned Brauner about limitations resulting from a skin rash, sleep problems, and side effects from medication.[60] Brauner's failure to complain about hearing loss contradicts her argument that the ALJ used the incorrect standard. The correct standard requires the ALJ to consider whether an impairment limits a claimant's ability to do basic work activities. The ALJ's determinations about Brauner's severe impairments—that Brauner's severe impairments include morbid obesity, osteoarthritis, asthma, headaches, dermatitis and diabetes—are consistent with that standard. The medical evidence may characterize Brauner's hearing loss as severe, but nothing in the medical evidence indicates that Brauner's hearing loss limits her physical or mental ability to do basic work activities. Likewise,

---

[56]*Id*. at p. 32.

[57]*Id*. at pp. 112-19.

[58]*Id*. at p. 118.

[59]*Id*. at p. 244.

[60]*Id*. at pp. 250-53.

Brauner's complaints do not indicate that her hearing loss limits her physical or mental ability to do basic work activities. The ALJ did not err in assessing Brauner's hearing loss.

Brauner finally complains that the ALJ did not assess the impact of her morbid obesity. According to Brauner, the SSA's obesity regulation required the ALJ to separately and expressly address the impact of obesity on her ability to work. The regulation discusses the impact of obesity on a claimant's ability to work as follows:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.[61]

The regulation requires the ALJ to assess "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."[62] The regulation, however, does not require the ALJ to discuss the impact of a claimant's obesity apart from the claimant's other impairments. Instead, the regulations require the ALJ to "assess and make a finding about [the person's] residual functional capacity based on all the relevant medical and other evidence in [her] case record."[63] Requiring a separate and express discussion would

---

[61]SSR 02-1p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, ¶ 8.

[62]*Id*.

[63]20 C.F.R. § 404.1520(e) (discussing considerations that apply when the claimant's impairment(s) does not meet or equal a listed impairment).

contradict the SSA's guidance about obesity because "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems" [64] and because "the combined effects of obesity with other impairments may be greater than might be expected without obesity."[65] Here, the ALJ determined that obesity was a severe impairment, along with osteoarthritis, asthma, headaches, dermatitis, and diabetes. The ALJ assessed Brauner's residual functional capacity considering the impairments and made a finding that included the factors required by the obesity regulation: sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, stooping, crouching, tolerance of environmental factors. The ALJ did not err in assessing Brauner's obesity.

Despite Brauner's complaints, substantial evidence supports the ALJ's conclusion that Brauner is not disabled under the Act. The scant medical evidence indicates the ALJ was generous in his determination about severe impairments. The ALJ characterized Brauner's morbid obesity, osteoarthritis, asthma, headaches, dermatitis, and diabetes as severe impairments, but there is little evidence of severity. An Xray of Brauner's knee showed mild tricompartmental degenerative joint disease.[66] An Xray of Brauner's lumbar spine showed minor spurring, but an otherwise negative lumbar spine.[67] A pulmonary function report showed mild chest restriction.[68] Brauner's treating physician has never determined that Brauner has a disability expected to last longer than six

---

[64] SSR 02-1p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, ¶ 2.

[65] *Id.* at ¶ 8.

[66] SSA record, p. 199.

[67] *Id.* at p. 148.

[68] *Id.* at p. 164.

months.[69]  No evidence suggests that Brauner has less residual functional capacity than determined by the ALJ, other than Brauner's assertion that she cannot work.  The ALJ accurately explained why the medical record does not substantiate the degree of pain and functional limitation Brauner alleges.[70]  The record includes one statement indicating that Brauner has less residual functional capacity than assessed by the ALJ, but that statement characterizes the limitations as "per patient."[71]  The ALJ explained why he did not give the statement significant weight.[72]  The ALJ made no error of law and substantial evidence supports the ALJ's determinations.

## Recommendation

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I recommend DENYING Brauner's request for relief (docket entry # 3) and AFFIRMING the Commissioner's decision.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this

---

[69]*Id*. at pp. 142 & 223.

[70]*Id*. at pp. 13-15.

[71]*Id*. at pp. 235-36.

[72]*Id*. at pp. 13-14.

time period is modified by the district court.[73]  **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[74]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[75]

  **SIGNED** on June 14, 2008.

             _Nancy Stein Nowak_
             NANCY STEIN NOWAK
             UNITED STATES MAGISTRATE JUDGE

---

[73] 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[74] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[75] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).